UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JEFFERSON PARISH                    CIVIL ACTION


VERSUS                              NO: 13-6714


EQUITABLE PETROLEUM CORP., ET AL.   SECTION: R


## ORDER

Before the Court is a Motion to Remand filed by plaintiff, Jefferson Parish, on its own behalf and on behalf of the State of Louisiana.[1]   Because the Court finds that subject-matter jurisdiction is lacking, plaintiff's motion to remand is GRANTED and the Court hereby remands this matter to the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana.


## I.   Background

This case is one of several cases filed by the Parish of Jefferson against various defendants for alleged violations of permits issued under the State and Local Coastal Resources Management Act of 1978, La. R.S. § 49:214.21, *et seq.*, along with the state and local regulations, guidelines, ordinances, and orders promulgated thereunder ("CZM laws").  Jefferson Parish initiated the instant suit in the 24th Judicial District Court for the Parish

---

[1] R. Doc. 21.

of Jefferson against thirteen defendants.[2]   Three of these
defendants are Louisiana companies: Graham Exploration, Ltd.,
Equitable Petroleum Corp., and Baby Oil, Inc.[3]  Additionally, in
its state-court petition, plaintiff disavows any other type of
claim, cause of action, or legal theory potentially cognizable on
the facts alleged, including any claim that could form the basis
for jurisdiction in federal court.[4]

Defendants nevertheless removed the case to this Court
alleging three bases for federal subject-matter jurisdiction: (1)
diversity jurisdiction; (2) the Outer Continental Shelf Lands Act
("OCSLA"); and (3) general maritime law.[5]  Plaintiff filed a motion
to remand.[6]   On February 26, 2014, the Court issued an order
deferring its ruling on the motion to remand and staying
proceedings until another section of this Court resolved a motion

---

[2] These defendants are: Equitable Petroleum Corp., Exxon
Mobil Corp., Graham Exploration Ltd., BEPCO, L.P., Chevron U.S.A
Holdings, Inc., Chevron U.S.A. Inc., Vintage Petroleum, LLC, Baby
Oil, Inc., Shell Oil Co., Union Oil Co. of California, Chevron
Pipe Line Co., Louisiana Land and Exploration Co., LLC, and Texas
Co.

[3] R. Doc. 31 at 3.

[4] R. Doc. 1-1  at 16-20.

[5] In its notice of removal, defendants cited the Natural Gas
Act and the Class Action Fairness Act as additional bases for
federal jurisdiction.  In their opposition to plaintiff's motion
to remand, however, defendants abandon these grounds for federal
jurisdiction.  R. Doc. 31 at 2 n.1.

[6] R. Doc. 21.

to remand presenting substantially identical issues.[7]

On December 1, 2014, Judge Zainey issued a decision remanding *Parish of Plaquemines v. Total Petrochemical & Refining USA, Inc., et al.* ("*Total*") to state court.[8]  After a thorough analysis, Judge Zainey determined that he lacked diversity jurisdiction, as well as OCSLA, admiralty, and federal question jurisdiction over substantially identical claims as those brought by plaintiff in this case.  Shortly thereafter, the Court granted the parties' joint motion to file supplemental memoranda and directed the parties to brief the issue of the applicability of Judge Zainey's order in *Total* to the specific facts of this case.[9]  In their supplemental briefing, defendants do not distinguish the facts of *Total* from this case, but instead argue that Judge Zainey's "analysis contradicts the governing authorities on the issues presented."[10]  Defendants in several other sections of the Court have taken a similar tack to no avail.  *See Plaquemines Parish v. Rozel Operating Co., et al.*, Civ. A. No. 13-6722 (E.D. La. Jan. 29, 2015) (Africk, J.); *Jefferson Parish v. Anadarko E&P Onshore LLC, et al.*, Civ. A. No. 13-6701 (E.D. La. Mar. 9, 2015) (Lemelle, J.);

---

[7] R. Doc. 27.

[8] *Total*, Civ. A. No. 13-6693, 2014 WL 6750649 (E.D. La. Dec. 1, 2014).

[9] R. Doc. 58.

[10] R. Doc. 59.

3

*Plaquemines Parish v. Hilcorp Energy Co., et al.*, Civ. A. No. 13-6727 (E.D. La. Apr. 29, 2015) (Feldman, J.); *Plaquemines Parish v. Devon Energy Prod. Co., et al.*, Civ. A. No. 13-6716 (E.D. La. May 12, 2015) (Barbier, J.).

As noted above, the facts and issues presented in this case are substantially identical to the foregoing cases. Plaintiff asserts that defendants' activities associated with the development of the Little Lake and Little Temple Oil & Gas Fields in Jefferson Parish violated the CZM laws and that these violations caused damage to land and water bodies located in Jefferson Parish.[11] For the purposes of resolving the instant motion, it is enough to note that (1) plaintiff and at least one defendant are citizens of Louisiana, (2) the conduct that is alleged to have violated the permits at issue occurred within Jefferson Parish and not on the Outer Continental Shelf, and (3) plaintiff disclaims any and all claims other than state-law permit violation claims.[12]

## II. Legal Standard

Unless a federal statute expressly provides otherwise, a defendant may remove a civil action filed in state court to federal court if the federal court would have had original jurisdiction

---

[11] R. Doc. Doc. 21-1 at 11.

[12] Defendants do not contest any of these facts. *See* R. Doc. 59.

over the case.  28 U.S.C. § 1441(a).  The removing party "bears the burden of showing that federal jurisdiction exists and that removal was proper." *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 397 (5th Cir. 2013) (citing *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002)).  In assessing whether removal was appropriate, the Court is guided by the principle, grounded in notions of comity and the recognition that federal courts are courts of limited jurisdiction, that "removal statute[s] should be strictly construed in favor of remand." *Manguno*, 276 F.3d at 723 (citing *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000)).

**III. Discussion**

Defendants allege three separate grounds for subject matter jurisdiction: (1) diversity jurisdiction; (2) jurisdiction under OCSLA; and (3) general maritime jurisdiction.  The Court will address each of these potential bases for jurisdiction in turn.

A.   *Diversity Jurisdiction*

For diversity jurisdiction to exist, the amount in controversy must exceed $75,000, and there must be complete diversity between plaintiffs and defendants. *See* 28 U.S.C. § 1332(a); *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978).  When a nondiverse party is properly joined as a defendant, no defendant may remove the case under 28 U.S.C. § 1332.  But a defendant may

5

remove despite the presence of a nondiverse defendant by showing that the nondiverse party was joined fraudulently due to plaintiff's inability to establish a claim under state law against the nondiverse defendant or due to fraud in the pleading of jurisdictional facts. *See, e.g., Melder v. Allstate Corp.*, 404 F.3d 328, 329 (5th Cir. 2005).

As was the case in *Total*, complete diversity of citizenship is lacking on the face of plaintiff's complaint because at least two of the defendants are citizens of Louisiana,[13] and Jefferson Parish, as a subdivision of the State of Louisiana, is considered a citizen of Louisiana for jurisdictional purposes. *See Moor v. Alameda Cnty.*, 411 U.S. 693, 717 (1973). Defendants acknowledge the presence of nondiverse codefendants, but argue that plaintiff fraudulently joined these nondiverse defendants to defeat diversity jurisdiction.[14] Defendants, however, do not argue that plaintiff cannot establish a claim against the nondiverse defendants or that plaintiff fraudulently pleaded jurisdictional facts. Instead, defendants premise their fraudulent joinder argument on a principle

---

[13] Defendants contend that one of the in-state defendants, Graham Explorations, Ltd. was dissolved before this suit was filed and, therefore, the Court should not consider Graham Exploration's citizenship when determining whether diversity jurisdiction exists. R. Doc. 31 at 5 n.3. The Court need not address the issue as defendants do not dispute that two of the other defendants, Equitable Petroleum and Baby Oil, are citizens of Louisiana. *Id.*

[14] *See* R. Doc. 59 at 1.

6

first established in *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353 (11th Cir. 1996), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000).  In *Tapscott*, the Eleventh Circuit recognized the possibility of fraudulent joinder when a diverse defendant is joined with a nondiverse defendant and the claim against the diverse defendant has no rational connection to the claim against the nondiverse defendant. *Id.*  Under *Tapscott*, only "egregious" misjoinder of parties with no real connection to each other, and not "mere" misjoinder, constitutes fraudulent joinder.  *Id.* at 1360.

Although the Fifth Circuit has never expressly adopted the *Tapscott* doctrine, several cases indicate this circuit's approval of the *Tapscott* notion of fraudulent joinder.  In *In re Benjamin Moore & Co.*, 309 F.3d 296 (5th Cir. 2002), the Fifth Circuit stated that a district court in its jurisdictional determination should consider whether misjoinder of a nondiverse party can defeat diversity jurisdiction.  *Id.* at 298 (citing *Tapscott*, 77 F.3d at 1360).  In a later petition for a writ of mandamus in that case, the Fifth Circuit held that it did not have jurisdiction to issue a writ and stated that its decision did not "detract[] from the force of the *Tapscott* principle that fraudulent misjoinder of plaintiffs is no more permissible than fraudulent misjoinder of defendants to circumvent diversity jurisdiction." *In re Benjamin Moore & Co.*, 318 F.3d 626, 630-31 (5th Cir. 2002).

7

Four years later, the Fifth Circuit appeared to recognize the *Tapscott* principle in *Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529 (5th Cir. 2006). There, the Fifth Circuit determined that federal jurisdiction over removed claims against a diverse defendant was proper, even though removal was precipitated by the state court's severance of these claims from plaintiff's claims against a nondiverse defendant over plaintiff's objection. *Id.* at 533. Plaintiff argued that the removal was improper because the severance of the nondiverse defendants was not a voluntary act of the plaintiff. The Fifth Circuit rejected plaintiff's argument and confirmed that dismissal of a fraudulently joined claim was an exception to the voluntary-involuntary rule. *Id.* The court then held that even if the scenario before it did not satisfy the criteria for traditional fraudulent joinder (*i.e.* fraud in the pleading of jurisdictional facts or inability to establish a cause of action against the in-state defendant), a like exception to the voluntary-involuntary rule applied to the fraudulently joined claims. The Court further stated that "[t]he fraudulent joinder exception to the voluntary-involuntary rule is designed to prevent plaintiffs from blocking removal by joining nondiverse and/or in-state defendants who should not be parties. That salutary purpose is also served by recognizing an exception to the voluntary-involuntary rule where defendants are improperly . . . joined." *Id.* In so holding, the court cited *Tapscott* by analogy. *Id.* at

8

533 n.5.

Thus, because the Fifth Circuit appears to have endorsed this principle and courts in the Eastern District of Louisiana have consistently applied *Tapscott*, the Court finds that defendants may argue that plaintiff fraudulently, or egregiously, joined the nondiverse defendants in this case. *See, e.g.*, *Fine v. State Farm Fire and Cas. Co.*, Civ. A. No. 15-80, 2015 WL 1810138, at *2 (E.D. La. Apr. 21, 2015) (applying *Tapscott*); *Kahn Swick & Foti, LLC v. Spector Roseman Kodroff & Willis, PC*, Civ. A. No. 14-1979, at *3 (E.D. La. Dec. 12, 2014) (same); *J.O.B. Investments, LLC v. Gootee Serv., LLC*, 908 F. Supp. 2d 771, 775-76 (E.D. La. 2012) (same).

In determining whether plaintiff's joinder of the nondiverse defendants was fraudulent under *Tapscott*, the Court will apply Louisiana's joinder rules. *See Davis v. Cassidy*, Civ. A. No. 11-1563, 2011 WL 6180054, at *3 (E.D. La. Dec. 13, 2011) ("As plaintiff here brought her action in state court and was required to follow state joinder rules in so doing, these state rules remain the relevant ones to determine the propriety of joinder in the Court's analysis of whether removal to federal court was warranted."). As defined by the Louisiana Code of Civil Procedure, "[c]umulation of actions is the joinder of separate actions in the same judicial demand, whether by a single plaintiff against a single defendant, or by one or more plaintiffs against one or more defendants." La. Code Civ. P. art. 461. Article 463 provides the

rule governing joinder.  It states that parties may be joined in the same suit if (1) there is a community of interest between the joined parties, (2) the cumulated actions are within the court's jurisdiction and venue is properly laid, and (3) the actions are mutually consistent and employ the same form of procedure.  La. Code Civ. Proc. art. 463.

Of these factors, defendants contest only the existence of a community of interest.  The Louisiana Supreme Court has stated that a "community of interest" exists when "the parties' causes of actions (or defenses) 'aris[e] out of the same facts, or present[] the same factual and legal issues.'"  *Stevens v. Bd. of Trustees of Police Pension Fund of City of Shreveport*, 309 So. 2d 144, 147 (La. 1975).  In other words, a "community of interest is present between different actions or parties[] where enough factual overlap is present between the cases to make it commonsensical to litigate them together."  *Mauberret-Lavie v. Lavie*, 850 So. 2d 1, 2 (La. App. Ct. 4th Cir. 2003), *writ denied*, 861 So. 2d 569 (La. 2003). The Louisiana Supreme Court has further instructed that the community of interest standard should be applied liberally. *Stevens*, 309 So. 2d at 147.

Here, the Court finds that there is sufficient factual and legal overlap between plaintiff's claims against the individual defendants for common sense to suggest that the claims be litigated together.  Plaintiff cumulated its claims against the thirteen

10

defendants based on the geographical and historical similarities between the disputed permits and activities, as well as the cumulative impact of the alleged permit violations.[15]   In other words, all of plaintiff's claims are governed by the same body of law (Louisiana's CZM laws and the permits issued thereunder), relate to a particular, well-defined geographic area, involve alleged injuries caused by similar types of activities (development of the two oil fields at issue), and allegedly caused a common, indivisible injury.   That individual defendant's liability will turn on different permits issued to different defendants does not render plaintiff's claims against the defendants "wholly distinct" from one another.  *Tapscott*, 77 F.3d at 1360.  *See also Lundquist v. J & J Exterminating, Inc.*, Civ. A. No. 07-1994, 2008 WL 1968339, at *4 (W.D. La. May 2, 2008) ("While the cause of the damage may stem from different sources . . . the overall damage itself is a quantifiable singular sum which may be apportioned among the defendants according to their individual responsibility for those damages.")*; Terrebonne Parish Sch. Bd. v. Texaco, Inc.*, Civ. A. No. 98-0115, 1998 WL 160919, at *3 (E.D. La. Apr. 3, 1998) (joinder of two companies who "independently drilled

---

[15] The Court notes that plaintiff's claims here are more tightly circumscribed than the plaintiff's claims in *Total*. Here, plaintiff's claims relate to permits issued for two oilfields covering approximately 25 square miles.  R. Doc. 31 at 3.  In *Total*, the claims related to permits issued for seven different oilfields covering approximately 200 square miles. *Total*, 2014 WL 6750649, at *6.

separate wells in separate canals at different times" did not constitute fraudulent misjoinder because "[t]he marshland is of such a porous nature that there is a considerable probability that activities or construction in one area could affect the water level and subsequent land erosion elsewhere").

In sum, the Court finds that plaintiff's applied a common-sense approach to cumulating its claims against the defendants and further finds that defendants have failed to show that this approach was "so egregious" as to constitute fraudulent misjoinder under the *Tapscott* doctrine. *See Bright v. No Cuts, Inc.*, Civ. A. No. 03-640, 2003 WL 22434232, at *9 (E.D. La. Oct. 27, 2003) (noting that even if claims were improperly cumulated under Louisiana law, mere misjoinder, rather than fraudulent misjoinder, is more properly addressed in state court). Because the nondiverse defendants were not fraudulently joined, the Court finds that it lacks diversity jurisdiction.[16]

B.   *OCSLA Jurisdiction*

Defendants next argue that the Court has jurisdiction under OCSLA.  The pertinent provision, OCSLA § 23(b)(1), states:

> [T]he district courts of the United States shall have jurisdiction of cases and controversies arising out of, or in connection with . . . any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the

---

[16] Because the Court finds that the nondiverse defendants are properly before the Court, the Court need not reach whether the State of Louisiana is a real party of interest.

subsoil and seabed of the outer Continental Shelf, or which involves rights to such minerals . . . .

The Fifth Circuit has interpreted this language as straightforward and broad. *See Tenn. Gas Pipeline v. Hous. Cas. Ins. Co.*, 87 F.3d 150, 154 (5th Cir. 1996). Moreover, because jurisdiction is invested in the district courts by this statute, "[a] plaintiff need not expressly invoke OCSLA in order for it to apply." *Barker v. Hercules Offshore, Inc.*, 713 F.3d 208, 213 (5th Cir. 2013). In accordance with these principles, the Fifth Circuit has held that a district court has jurisdiction under the OCSLA if "(1) the activities that caused the injury constituted an 'operation' conducted on the outer Continental Shelf that involved the exploration and production of minerals, and (2) the case 'arises out of, or in connection with' the operation." *In re DEEPWATER HORIZON*, 745 F.3d 157, 163 (5th Cir. 2014). *See also Barker*, 713 F.3d at 213 ("To determine whether a cause of action arises under OCSLA, the Fifth Circuit applies a but-for test, asking whether: (1) the facts underlying the complaint occurred on the proper situs; (2) the plaintiff's employment furthered mineral development on the OCS; and (3) the plaintiff's injury would not have occurred but for his employment."). Although not defined in the statute, the Fifth Circuit defines "operation" as "the doing of some physical act on the OCS." *E.P. Operating P'ship v. Placid Oil Co.*, 26 F.3d 563, 567 (5th Cir. 1994).

In the present case, the "operations" that allegedly caused

13

the injuries--the defendants' alleged violations of CZM permits in Jefferson Parish--do not meet the first prong of the Fifth Circuit's test, as the defendants' alleged permit violations occurred in Jefferson Parish, not the Outer Continental Shelf.  In other words, the activities that allegedly caused the injuries in this case do not constitute "physical acts on the OCS."  *E.P. Operating*, 26 F.3d at 567.  *See also Bd. of Com'rs of the S.E. La. Flood Prot. Auth.-E. v. Tenn. Gas Pipeline Co.*, 29 F. Supp. 3d 808, 836 (E.D. La. 2014) ("Considering that all of the activities causing Plaintiffs' injuries occurred on Louisiana's coastal lands or within Louisiana's territorial waters, they cannot be characterized as 'an operation conducted on the Outer Continental Shelf that involved the exploration or production of minerals.'"); *Plains Gas Solutions, LLC v. Tennessee Gas Pipeline Co.*, 46 F. Supp. 3d 701, 706 (S.D. Tex. 2014) ("The sole physical act . . . occurred onshore and was not conducted on the OCS . . . and therefore this Court lacks jurisdiction over the claim.").

Defendants concede that none of the alleged permit violations occurred on the Outer Continental Shelf, but nevertheless argue that jurisdiction is proper because "the complained-of activities in this case include the construction and maintenance of infrastructure that directly supports OCS operations."[17]  In other words, defendants contend that but for oil and gas production

---

[17] R. Doc. 59 at 14.

14

activities on the Outer Continental Shelf, defendants would not have engaged in the activities at issue in Jefferson Parish.

The Court acknowledges that the Fifth Circuit has articulated the OCSLA jurisdictional inquiry in a variety of ways. *Compare DEEPWATER HORIZON*, 745 F.3d at 163 (OCSLA jurisdiction exists if "(1) the activities that caused the injury constituted an 'operation' conducted on the outer Continental Shelf that involved the exploration and production of minerals, and (2) the case 'arises out of, or in connection with' the operation.") *with Amoco Prod. Co. v. Sea Robin Pipeline Co.*, 844 F.2d 1202, 1210 (5th Cir. 1988) (Parties' exercise of contractual take-or-pay rights "has an immediate bearing on the production of the particular well," and dispute over those rights is a controversy arising out of, or in connection with an operation that "involves exploration, development, or production of the minerals . . . ."). The Court finds that the context of *DEEPWATER HORIZON* is the closest to the facts presented here and that the *DEEPWATER HORIZON* formulation of the test applies in this case. Assuming, as the Court must, that the Fifth Circuit meant what it said, the *DEEPWATER HORIZON* test requires a court to "determine the connection between a case and an operation *only after* it has established that the activities that caused the injury constituted an operation on the OCS." *Plains Gas Solutions*, 46 F.3d at 705 (emphasis added). As stated above, it is undisputed that the "activities that caused the injury" in this

case occurred in Jefferson Parish, not on the Outer Continental Shelf.  The Court's jurisdiction therefore fails at the first prong of the *DEEPWATER HORIZON* inquiry.  *Total*, 2014 WL 6750649, at *16 ("In sum, because Defendants cannot establish that the activities that caused the injury constituted an operation 'conducted on the outer continental shelf,' jurisdiction fails without consideration of the Fifth Circuit's 'but for' test.").

Thus, for the foregoing reasons, the Court finds that it does not have jurisdiction under the OCSLA.

C.   *Maritime Jurisdiction*

Finally, defendants argue that they properly removed this case under federal maritime law.[18]  First, defendants contend that some of plaintiff's claims meet the test for maritime jurisdiction and that the claims that do not fall within the Court's supplemental jurisdiction because they share a common nucleus of operative fact with the maritime claims.[19]  Second, defendants argue that the 2011 amendment to 28 U.S.C. § 1441 allows for removal of maritime claims without an independent basis for federal jurisdiction.

---

[18] R. Doc. 59 at 14.

[19] *Id.*  The Court notes that, with regard to *Tapscott* fraudulent joinder, defendants argued that plaintiff's claims were "wholly separate" from one another, but now, with respect to maritime jurisdiction, defendants argue that the claims share a common nucleus of operative fact.  Because the Court finds that maritime claims are not removable absent an independent basis for federal jurisdiction, the Court need not address this inconsistency.

16

1.   *Historical   Underpinnings   of   Federal   Maritime  Jurisdiction*

Article III, Section 2 of the United State Constitution extends federal jurisdiction over all cases of admiralty and maritime jurisdiction.  U.S. Const. art. III, § 2.  Congress codified this jurisdictional grant in the Judiciary Act of 1789, which provides:

> That the district courts shall have, exclusively of the courts of the several States . . . exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction . . . within their respective districts as well as upon the high seas; saving to suitors in all cases, the right of a common law remedy, where the common law is competent to give it.

Ch. 20, § 9, 1 Stat. 73.  The last sentence, commonly referred to as the saving-to-suitors clause, has been reworded over the years, but "its substance has remained largely unchanged."  *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 444 (2001).  *See also* 28 U.S.C. § 1333 ("The district courts shall have original jurisdiction, exclusive of the courts of the States, of: (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled . . . .").

Although the saving-to-suitors clause appears to conflict with the exclusive grant of federal jurisdiction over all claims of admiralty and maritime jurisdiction, courts traditionally interpreted the conflicting provisions of the Act to create two alternate bases for federal maritime jurisdiction.  *Romero v. Intern. Terminal Operating Co.*, 358 U.S. 354, 362-63 (1959).

17

First, courts interpreted the Act to grant exclusive federal jurisdiction to claims proceeding in admiralty alone, meaning "those maritime causes of action begun and carried on as proceedings *in rem*, that is, where a vessel or thing is itself treated as the offender and made the defendant by name or description in order to enforce the lien." *Madruga v. Superior Court of State of Cal. in & for San Diego Cnty.*, 346 U.S. 556, 560 (1954). If a maritime plaintiff filed suit in state court seeking common-law remedies, however, the case fell within the savings-to-suitors clause's "exception" to exclusive federal jurisdiction. *See Romero*, 358 U.S. at 362 (maritime actions seeking common-law remedies fell within the savings-to-suitors clause and were "traditionally administered by common-law courts of the original States"); *Barker v. Hercules Offshore, Inc.*, 713 F.3d 208, 222 (5th Cir. 2013) ("However, admiralty jurisdiction is not present in this suit because Barker filed in state court, therefore invoking the saving-to-suitors exception to original admiralty jurisdiction."). Thus, up until the passage of the Judiciary Act of 1875, federal courts could hear common-law maritime claims, or "saving clause cases," only when another source of federal jurisdiction existed. *Romero*, 358 U.S. at 362 ("Since the original Judiciary Act also endowed the federal courts with diversity jurisdiction, common-law remedies for maritime causes could be enforced by the then Circuit Courts when the proper diversity of parties afforded access.").

Additionally, courts historically interpreted the savings clause to require that "[e]xcept in diversity cases, maritime litigation brought in state courts could not be removed to the federal courts." *Id.* at 363.

The Judiciary Act of 1875 extended federal jurisdiction to "all suits of a civil nature at common law or in equity . . . arising under the Constitution or laws of the United States," creating federal question jurisdiction now codified at 18 U.S.C. § 1331. In *Romero v. International Terminal Operating Company*, the Supreme Court rejected the argument that saving clause claims fell within "the laws of the United States" for purposes of federal question jurisdiction. *Id.* at 360. In reaching this conclusion, the Supreme Court relied on the "long-established and deeply rooted" dichotomy between pure admiralty claims, which were cognizable in federal court, and saving clause claims, which were cognizable in federal court only if there was an independent basis for exercising federal jurisdiction. *Id.* at 372. Moreover, after considering the "language and construction" of the Judiciary Act of 1875, the Court "uncovered no basis . . . changing the method by which federal courts had administered admiralty law from the beginning." *Id.* at 368. In so holding, the Supreme Court recognized that to hold otherwise would eliminate "the historic option of a maritime suitor pursuing a common-law remedy to select his forum, state or federal . . . since saving-clause actions would

then be freely removable under § 1441 of Title 28." *Id.* at 371-72. Absent any evidence of Congress' intent to "change[] the method by which federal courts had administered admiralty law for almost a century," the Court refused to find that such "a revolutionary procedural change had undesignedly come to pass." *Id.* at 369. Since *Romero*, federal courts have continued to hold that saving clause claims cannot be removed from state court unless there in an independent basis for federal jurisdiction. *See, e.g., Gaitor v. Peninsular & Occidental Steamship Co.*, 287 F.2d 252, 255 (5th Cir. 1961) (*Romero* "made clear that except in diversity cases, maritime litigation brought in state courts could not be removed to the federal courts."); *Ghotra by Ghotra v. Bandila Shipping, Inc.*, 113 F.3d 1050, 1054 (9th Cir. 1997) ("The savings to suitors clause also permits the plaintiff to bring an action 'at law' in the federal district court, provided the requirements of diversity of citizenship and amount in controversy are met."); *Oklahoma ex rel. Edmondson v. Magnolia Marine Transp. Co.*, 359 F.3d 1237, 1241 (10th Cir. 2004) ("Courts have consistently interpreted the 'savings clause' to preclude removal of maritime actions brought in state court and invoking a state law remedy provided there is no independent basis for removal such as the presence of a federal question or diversity of citizenship."); *Bisso Marine Co., Inc. v. Techcrane Intern., LLC*, Civ. A. No. 14-0375, 2014 WL 4489618, at *3 (E.D. La. Sept. 10, 2014) ("For more than 200 years," a common-law

20

maritime action brought in state court was not removable to federal court "based on admiralty jurisdiction alone.").

2.   <em>The 2011 Amendment to the Removal Statute</em>

Defendants contend that Congress' 2011 amendment to the removal statute, 28 U.S.C. § 1441(b), eliminates the historical prohibition on removing saving clause cases to federal court.[20] Before the 2011 amendment, 28 U.S.C. § 1441(b) stated:

> Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties, or laws of the United States shall be removable without regard to the citizenship of residence of the parties.  Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

28 U.S.C. § 1441(b) (2006).   Under this former version of the statute, the Fifth Circuit in <em>In re Dutile</em> held that general maritime claims did not "arise[] under the Constitution, treaties or laws of the United States" and thus, fell within the category of "[a]ny other [civil] action" under Section 1441(b).  935 F.2d 61, 63 (5th Cir. 1991).   Accordingly, the Fifth Circuit held that saving clause claims were subject to the "forum-defendant" rule and were removable only if none of the defendants to the suit was a citizen of the state in which the action was brought.  <em>Id.</em>  ("The practical effect of these provisions is to prevent the removal of admiralty claims pursuant to § 1441(a) unless there is complete

---

[20] R. Doc. 31 at 35.

21

diversity of citizenship (predicated upon out-of-state defendants)."). The Fifth Circuit reached this conclusion by "constru[ing] the plain language of § 1441(b), read in conjunction with *Romero*," and reiterated the familiar maxim that "Congress simply has not supplied the district courts with removal jurisdiction of admiralty claims absent diversity." *Id.*

In 2011, Congress amended the removal statute and Section 1441 now provides:

> (a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts for the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.
>
> (b)(1) In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded.
>
> (b)(2) A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which the action is brought.

Notably, Congress removed the language "[a]ny other such action" from subsection (b), which the Fifth Circuit in *Dutile* had partially relied on in reaching its conclusion that savings clause claims were not removable if a defendant was a citizen of the forum state.

The Fifth Circuit discussed the 2011 amendment in *Barker v. Hercules*, 713 F.3d 208, (5th Cir. 2013), even though the case was

22

decided on the pre-amendment version of Section 1441. In *Barker*, the Fifth Circuit stated that "even though federal courts have original jurisdiction over maritime cases under 28 U.S.C. § 1333, they do not have removal jurisdiction over maritime cases which are brought in state court." *Id.* at 219. Instead, the Fifth Circuit held that "such lawsuits are exempt from removal by the 'saving to suitors' clause . . . and therefore may only be removed when original jurisdiction is based on another jurisdictional grant, such as diversity of citizenship." *Id.* Thus, when discussing Congress' "clarification" of Section 1444(b), the Fifth Circuit stated that the Section 1444(b)'s "forum-defendant" rule applies only in actions removed on the basis of diversity jurisdiction and that "cases invoking admiralty jurisdiction under 28 U.S.C. § 1333 may [still] require complete diversity prior to removal." *Id.* at 223 (citing *Dutile*, 935 F.2d at 63).

Notwithstanding the Fifth Circuit's discussion in *Barker*, several district courts have been persuaded that the Congress' 2011 amendment rendered saving clause claims freely removable under 28 U.S.C. § 1441. *See, e.g., Ryan v. Hercules Offshore, Inc.*, 945 F. Supp. 2d 772 (S.D. Tex. 2013). In reaching this conclusion, the *Ryan* court dismissed *Barker*'s discussion as *dicta,* and found that Section 1441(a)'s reference to the federal court's "original jurisdiction" means that saving clause claims initially filed in state court are now removable, as such cases fall within a federal

23

court's original jurisdiction under 18 U.S.C. § 1333. *Id.* at 778. Defendants ask the Court to adopt the *Ryan* court's reasoning or, in the alternative, certify this question under 28 U.S.C. § 1292(b) to allow the Fifth Circuit to resolve this issue.[21]

The Court disagrees with the *Ryan* reasoning and joins the majority position, as well as every other section of this court, in holding that the 2011 amendment to Section 1441(b) did not displace the longstanding rule that common-law maritime claims initially filed in state court are not removable absent an independent basis for exercising federal jurisdiction. *See Yavorsky v. Felice Navigation, Inc.*, Civ. A. No. 14-2007, 2014 WL 5816999, at *4 (E.D. La. Nov. 7, 2014) (collecting cases); Wright and Miller, 14A Fed. Prac. & Proc. § 3674 (4th ed.) ("Several district courts that have considered the issue since have followed the reasoning of the *Ryan* court, but a majority have proffered reasons why admiralty jurisdiction does not independently support removal.").

As an initial matter, the prohibition on removing saving clause cases absent an independent ground for federal jurisdiction is a historic rule grounded in both tradition and principles of federalism. *See Romero*, 358 U.S. at 372 ("By making maritime cases removable to the federal courts it would make considerable inroads into the traditionally exercised concurrent jurisdiction of the state courts in admiralty matters--a jurisdiction which it was the

---

[21] R. Doc. 59 at 15.

unquestioned aim of the saving clause of 1789 to preserve."). Congress has given no indication that it intended to make substantive changes to the traditional rules of admiralty removal.[22] If Congress intended to open the federal courts to a new class of cases that had historically been excluded "we can hardly suppose that it would have failed to use some appropriate language to express that intention." *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 107 (1941). Indeed, to hold otherwise "would disrupt traditional maritime policies and quite gratuitously disturb a complementary, historic interacting federal-state relationship." *Romero*, 358 U.S. at 375. Thus, absent clear indication that Congress intended to make fundamental changes to the law governing removal of admiralty matters, the Court will not disrupt the "long-established and deeply rooted" prohibition on removing saving clause cases from state court based on nothing more than Congress' "clarification" of provisions in the removal statute. *Id.* at 372.

Moreover, the prohibition on removing saving clause cases did not derive from the "any other such action" language in former Section 1441(b). Instead, the rule emanates from the saving-to-suitors clause itself, which provides an exception to the federal

---

[22] H.R. REP. No. 112-10 ("Section 103(a)(3) places the provisions that apply to diversity actions under one subsection. This change is intended to make it easier for litigants to locate the provisions that apply uniquely to diversity removal."). *See also Barker*, 713 F.3d at 223 (Congress intended the "updated version [to be] a clarification, as opposed to an amendment, of the original statute").

court's original jurisdiction for common-law maritime claims filed in state court. *Barker*, 713 F.3d at 222 ("However, admiralty jurisdiction is not present in this suit because Barker filed in state court, thereby invoking the saving-to-suitors exception to original admiralty jurisdiction."). In other words, a common-law maritime claim filed in state court is not removable because it is not within a district court's original jurisdiction as that phrase is used in 18 U.S.C. § 1441. *See Tenn. Gas Pipeline v. Houston Cas. Ins. Co.*, 87 F.3d 150, 153 (5th Cir. 1996) ("Tennessee Gas's maritime claim is not removable under the first sentence of 28 U.S.C. § 1441(b) by falling within the admiralty jurisdiction of the federal courts.");[23] *Bisso Marine Co.*, 2014 WL 4489618, at *4 (holding that the *Ryan* court's reasoning fails because "[i]t overlooks the long history of maritime removal jurisdiction; it is based on the mistaken premise that § 1333 confers original jurisdiction over maritime cases brought at law, as opposed to in admiralty; and it gives defendants the power to convert the plaintiff's suit at law to a suit in admiralty"); *J. Aron & Co. v. Chown*, 894 F. Supp. 697, 699-700 (S.D.N.Y. 1995) ("Fundamentally, the problem is that, once Aron elected to commence *Chown* as a

_____

[23] The first sentence of former Section 1441(b) provided: "Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties, or laws of the United States shall be removable without regard to the citizenship of residence of the parties."

26

common law action and not an admiralty action, there was no basis for a federal court to assert admiralty jurisdiction over *Chown* . . . . Section 1441(a) does not cure this problem, because it only permits the removal of civil actions over which the federal district courts have original jurisdiction.  Thus, removal of *Chown* was improper because *Chown* was never a civil action over which the federal district courts have original jurisdiction.");  *Vincent v. Regions Bank*, Civ. A. No. 08-1756, 2008 WL 5235114, at *1 (M.D. Fla. Dec. 15, 2008) ("The plaintiff's election to sue at common law in state court forever prevents the federal district courts from obtaining admiralty jurisdiction.") (internal citation omitted). Simply put, the historic prohibition on removing common-law maritime claims is grounded in the saving-to-suitors clause, not Section 1441.  Thus, Congress' 2011 amendment to Section 1441 has no bearing on whether a party may remove a common-law maritime claim absent an independent basis for federal jurisdiction.  *See Gregoire v. Enterprise Marine Servs., LLC*, 38 F. Supp. 3d 749, 765 (E.D. La. 2014) ("[T]his Court finds that general maritime law claims are not removable under Section 1333 as part of the original jurisdiction of the court and require an independent basis of jurisdiction.").

For the foregoing reasons, the Court finds that Congress' 2011 amendment to 18 U.S.C. § 1441 did not alter the long-standing rule that common-law maritime claims are not removable absent an

27

independent basis for asserting federal jurisdiction. Thus, the Court finds that maritime law does not provide an independent basis for exercising removal jurisdiction for the claims asserted here. The Court further declines defendants' request to exercise its discretion to certify this question for interlocutory appeal under 28 U.S.C. § 1292(b).

## V. Conclusion

For the foregoing reasons, the Court finds that it lacks subject-matter jurisdiction over plaintiff's claims under diversity jurisdiction, OCSLA, or maritime law. Accordingly, plaintiff's motion for remand is GRANTED. The Court hereby remands this matter under 28 U.S.C. § 1447(c) to the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana.

New Orleans, Louisiana, this ___18th___ day of May, 2015.

_____

**SARAH S. VANCE**

**UNITED STATES DISTRICT JUDGE**